IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Guardianship<br><br>of<br><br>A.A.C.A., a/k/a A.A.C. | No. 88339-9-I (Consolidated with No. 88340-2-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — In the guardianship action of her daughter A.A.C., D.A. contends that required trial court findings to establish the guardianship— specifically, that necessary mental health services were offered or provided to her and that little likelihood existed that conditions would be remedied so that her daughter could be returned to her in the near future—were not supported by substantial evidence. We hold these findings were supported by substantial evidence and affirm.

FACTS

In 2016, appellant D.A. entered into an agreed order of dependency as to her older daughter C.A.A., who was less than one year old at the time. D.A. agreed to facts including that she completed six months of inpatient treatment at Swedish Hospital; upon leaving treatment, she resided with C.A.A. until she relapsed on heroin. The next year, 2017, the court terminated D.A.'s parental rights to C.A.A. In the termination, the court found that D.A. had again been in inpatient treatment, with C.A.A., but abandoned treatment and C.A.A. was

removed. D.A. then engaged in intensive outpatient treatment but became non-compliant and began producing positive urinalysis (UA) test results. Since that time, the court found D.A. had not been able to commit to any significant length of time in treatment.

Three years later, in November 2020, D.A. gave birth to her younger daughter, A.A.C., the subject of this guardianship action. D.A. was receiving methadone maintenance with Evergreen Treatment Services at the time; both mother and daughter tested positive for methadone and THC[1] at the time of birth.

On January 13, 2021, law enforcement responded to a report of domestic violence (DV) between D.A. and A.A.C.'s father at the family's home. A.A.C.'s father was arrested for DV assault and Seattle police took A.A.C. into protective custody. The father was later released from jail, without charges filed, and he tested positive for opioids. On January 28, 2021, shelter care was found as to the father, but not D.A., and A.A.C. remained with D.A. with placement conditions.

On March 8, 2021, Stephanie Swafford, A.A.C.'s godmother, who also lived in the same apartment complex as the family, reported to the Washington Department of Children, Youth and Families (Department) that she had concerns about D.A.'s substance use and that the father had picked up A.A.C., which violated the terms of the shelter care order. The next day, D.A.'s treatment provider reported to a social worker that D.A. was under the influence. D.A. was admitted to the hospital after being found unconscious and A.A.C. was brought to

---

[1] Tetrahydrocannabinol - a cannabinoid found in cannabis.

Swafford's home.  On March 12, the trial court granted the Department's emergency motion to place A.A.C. in shelter care and formally placed her with Swafford.

On April 9, 2021, the superior court entered an order finding A.A.C. dependent, with D.A.'s agreement.  At that time, D.A. was engaged in outpatient substance use treatment at Evergreen Treatment Services.  The disposition order entered the following month placed A.A.C. with her paternal grandmother, Linda Reid, "in the home of Ms. Swafford, or in Ms. Reid's own independent housing."  D.A. states that during this time she regularly visited A.A.C. at Swafford's home and helped care for her.  In November 2022, D.A. successfully completed a 30-day in-patient treatment program for substance use disorder in Tacoma, Washington, but did not complete the subsequent recommended outpatient treatment and lost contact with the Department.

In February 2023, A.A.C. moved to Ohio with Reid.  She has lived there ever since.  During this time, D.A. was not in contact with the Department.  Around October 2023, D.A. contacted her caseworker to let her know that she was pregnant and had enrolled in a short-term in-patient detox treatment program for pregnant women at Swedish Hospital.  Following completion of that program, D.A. enrolled in a substance use disorder in-patient treatment program at Evergreen Recovery Center for Pregnant and Parenting Women from around December 2023 to July 2024.  D.A. gave birth to her son, M.H.C., while at Evergreen in February 2024.

Based on D.A.'s engagement with treatment at Evergreen, the Department paused the guardianship action and re-established visitation during this period while D.A. was in treatment. Reid testified that during this time D.A. was in treatment, from October 2023 through June 2024, she was consistent in making her virtual visits with A.A.C. each week and even had in-person visits at the treatment facility.

In preparation for D.A.'s graduation from the Evergreen treatment program, the trial court granted D.A.'s motion for a trial return home on July 2, 2024, conditional on certain requirements being met. Though D.A. did graduate from the Evergreen treatment program on July 4, 2024, the trial return home never happened because the Department received no documentation that D.A. had followed through with the requirements set for the return. Reid testified at trial that D.A.'s virtual visits with A.A.C. also became very inconsistent once she left treatment, stating that D.A. had "maybe 10 [visits], and that's being generous" virtual visits with A.A.C. from the time she left treatment in July 2004 to the time of trial. And no in-person visits occurred during that time period, even when Reid brought A.A.C. to Washington in March 2025 specifically to visit D.A.

Meanwhile, on September 2, 2024, law enforcement placed M.H.C. in protective custody after responding to a call and finding M.H.C. unattended in a car seat outside of D.A.'s apartment and, after forcing entry into the apartment, finding no one inside and drugs and paraphernalia in plain view. Neighbors reported to the police that they had seen M.H.C. left outside before for extended

amounts of time.  The Department later petitioned for dependency of M.H.C. as to both parents.

King County Superior Court conducted a joint trial on the guardianship of A.A.C. and the dependency of M.H.C. from April 23 to May 7, 2025.  D.A. contested both but did not attend trial despite her assigned Department social worker Michele Mishra's efforts to make sure she could attend.  Mishra testified that she had no documentation that D.A. was currently engaged with substance use disorder treatment or her court-ordered mental health assessment or UA drug tests.  After trial, the court entered an order establishing guardianship of A.A.C. under RCW 13.36.050 and appointing Reid her guardian.  The court also entered an order finding M.H.C. dependent.

D.A. appeals the guardianship of A.A.C.[2]

ANALYSIS

A guardianship provides a path to permanency for a dependent child, and is an alternative to termination of parental rights.  *In re Guardianship of D.S.*, 178 Wn. App. 681, 687, 317 P.3d 489 (2013).  While "[a] guardian maintains physical and legal custody of a child," "[t]he parent retains a right of contact with the child as determined by the court."  *D.S., 178 Wn. App.* at 688.

To establish a guardianship under RCW 13.36.040(2)(c), a court must find that each of the six statutory elements have been proven by the preponderance

---

[2]  D.A.'s notice of appeal also included the order of dependency entered the same date regarding her younger son, M.H.C., assigned case number 88340-2-I.  D.A. offers no argument on appeal regarding this dependency order. We deem appeal 88340-2-I abandoned.

of the evidence.  *In re Dependency of A.C.,* 123 Wn. App. 244, 248, 98 P.3d 89 (2004).  D.A. contends that the State failed to provide substantial evidence of two of these required statutory elements, detailed further below.  "Substantial evidence is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *In re Welfare of T.B.*, 150 Wn. App. 599, 607, 209 P.3d 497 (2009) (citing *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991)).  The determination of whether the findings of fact are supported by substantial evidence "must be made in light of the degree of proof required."  *In re Dependency of P.D.*, 58 Wn. App. 18, 25, 792 P.2d 159 (1990).  In determining whether substantial evidence supports the trial court's findings, "this court does not weigh the evidence or the credibility of witnesses." *In re Dependency of E.L.F.*, 117 Wn. App. 241, 245, 70 P.3d 163 (2003).

Necessary Services under RCW 13.36.040(2)(c)(iv)

To grant a guardianship petition, the court must find that "the services ordered under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided." RCW 13.36.040(2)(c)(iv).  To fulfill the "necessary services" factor, "at a minimum" the Department "must provide a parent with a list of referral agencies that provide those services."  *In re Dependency of D.A.*, 124 Wn. App. 644, 651, 102 P.3d 847 (2004).

The trial court found that the court-ordered services D.A. agreed to, including "[m]ental [h]ealth [a]ssessment," "have been provided with regularity and with reminders by the Department. . . . Reminders and offers of services included the services themselves, contact information for potential providers, [Department] contact information, and upcoming court dates.  These were provided through phone calls, texts and service letters."

D.A. contends that this finding was not supported by substantial evidence that the Department "reasonably and understandably provide necessary mental health services" to D.A.  We disagree.

Department social worker Allison Newton-Moore, who worked with D.A. from August 2022 to July 2024, testified that she provided D.A. with monthly "service letters" from the Department, either hand-delivered or mailed to D.A.'s residence.  She testified that D.A. was court-ordered to complete mental health assessments and services.  She testified that service letters include the clients' "required services, why that service is required, and how to access that service."  "[S]o, for example, if a parent needs like a mental health assessment, I will list some locations that are nearby to their home, and the address of that location, the phone number, sometimes their hours of operation, that sort of information."  She testified that mental health services were "included in my service letter with how to access the services" that she provided to D.A.  D.A. contends that none of these letters were introduced into evidence, but cites no authority that these letters must be introduced into evidence where the social worker described the

7

content of the letters in sufficient detail to show they were understandable and no evidence to the contrary was presented.

Meanwhile, D.A. received mental health counseling through her residential treatment program at Evergreen, where she received treatment from about December 2023 to July 2024.  Department social worker Mishra, who took over D.A.'s case in July 2024 as D.A. completed the Evergreen treatment, testified that she referred D.A. to Consejo Counseling for a "mental health assessment and followed through with recommendations" in February 2025 when D.A. told her she could not remember her last provider.

D.A. contends that the Department took a non-integrated "sequential approach" by offering mental health services only after substance use disorder services because Mishra testified that she held back on referrals for other services "in order to give [D.A.] the opportunity to fully engage with SUD [substance use disorder] treatment."  But during the time period in question, which would have been from July 2024 to February 2025, Mishra also testified that she had only "sporadic" contact with D.A., and during these contacts, D.A. said that she was engaging in her recommended intensive outpatient services. Once D.A. reported that she could not remember her mental health provider, Mishra promptly provided another mental health referral.  D.A.'s sequential argument also ignores the earlier service letters and mental health services at Evergreen, all of which occurred before Mishra entered the case.

In addition, in every review hearing order that was entered into evidence and every permanency planning hearing order during the pendency of this case,

the court found that the Department had made reasonable efforts to provide services to D.A. and the family and eliminate the need for out-of-home placement of A.A.C.

In short, sufficient evidence supported the trial court's finding by the preponderance of the evidence that court-ordered mental health services were provided or offered in satisfaction of RCW 13.36.040(2)(c)(iv).

Likelihood conditions will be remedied under RCW 13.36.040(2)(c)(v)

To grant a guardianship petition, the court must find that "[t]here is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future."  RCW 13.36.040(2)(c)(v).  What constitutes "near future" depends on the age of the child and the circumstances of the child's placement.  *In re Dependency of T.L.G.*, 126 Wn. App. 181, 205, 108 P.3d 156 (2005).  D.A contends that the trial court's finding of this statutory element was not supported by substantial evidence.  Again, we disagree.

The trial court found:

18.   There is little likelihood that the conditions will be remedied so that [A.A.C.] can return to her mother in the near future.

   a.  [A.A.C.] is four years old.  Her near future is likely no more than a few weeks.  Given the mother's history, established pattern of behavior, admission that when she is in active use she is incapable of caring for her child, current active use and lack of communication with the Department and her child - there is little likelihood that conditions could be remedied in several months let alone a few weeks.

Notably, D.A. does not challenge the directly preceding finding which details D.A.'s longstanding pattern of success in an inpatient setting followed by relapse and unreliability upon leaving that controlled setting:  "The court finds that

9

the timeline set out by the admitted exhibits demonstrates a pattern of the mother's engagement with services and engagement/motivation to parent her children. The mother is capable and motivated in a structured inpatient setting, but once that disappears the mother relapses and becomes unreliable. This has been a consistent pattern since 2016." This unchallenged finding is a verity on appeal. *See In re Marriage of Laidlaw*, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018) (unchallenged findings of fact are verities on appeal).

First, D.A. contends that "substantial evidence did not support the court's finding that A.A.C.'s 'near future' was 'no more than a few weeks.' " D.A. proposes that A.A.C.'s "*near future*" is actually about six to twelve months. (Emphasis supplied.) Significantly, the trial court found little likelihood existed that conditions could be remedied even in "several months," so whether the "near future" is defined as a few weeks or six to twelve months, the trial court's finding that conditions would not be remedied in time extended at least partly into D.A.'s proposed "near future" window.

Specifically, D.A. contends that the trial court improperly based its finding that A.A.C.'s near future was "no more than a few weeks" solely on the "speculative and unfounded" testimony of Department social worker Mishra, who testified that A.A.C. could comprehend "no more than a week or two weeks" into the future. But, as the Department points out in response, Mishra testified that she had earned both a Bachelor's degree and Master's degree in social work, which included the study of "child development, development through the lifespan," and "the impact of trauma on development." She testified that she had

10

worked with over 100 families during her employment with the Department. Given these qualifications, D.A. fails to show that the trial court erred in considering Mishra's opinion.

While D.A. asserts that the trial court improperly based its "near future" finding on "*only* a child's ability to comprehend time," (emphasis added), she ignores that the trial court also acknowledged the fact-specific circumstances of A.A.C.'s placement. Specifically, the trial court acknowledged D.A.'s history of substance use, pattern of relapse and admissions that she is incapable of caring for her child when in active use, current active use and lack of communication with A.A.C. and the Department in the same finding. In addition, evidence before the court showed that A.A.C.'s development was being impacted by the circumstances of her placement: Reid testified that A.A.C. was coming to believe that Reid was the cause of her missed visits with D.A. and that A.A.C. became agitated and upset for extended periods of time when D.A. failed to follow through on promises to her, such as calling her or sending a gift, and Reid reported concerns to the CASA advocate about the impact on A.A.C. after her virtual visits with D.A. D.A. asserts that A.A.C.'s "healthy, supportive" relationship with her paternal grandmother was a placement that could "continue indefinitely" and thus supported a longer estimate of the "near future." But it's also true that this very established relationship, where A.A.C. had been placed with Reid since she was about six months old and, by the time of the trial, was settled with a routine of preschool and extracurricular activities in Ohio, could instead support a shorter estimate of the "near future." The record does not

11

reflect that the trial court maintained a myopic focus on Mishra's opinion about A.A.C.'s ability to comprehend time. Rather, the record reflects that the trial court took into account the circumstances of A.A.C.'s placement, in addition to her age. *See T.L.G.*, 126 Wn. App. at 204.

Next, D.A. continues that the Department "failed to present substantial evidence there was little likelihood" that D.A. "would make sufficient improvement in addressing her substance use disorder such that she and A.A.C. could be reunited within the near future." D.A. claims that the trial court erred in relying on *completion* of treatment and not sufficient *progress* in treatment necessary to be reunited with A.A.C., citing for this proposition *T.L.G.*, 126 Wn. App. 181, and *In re Welfare of C.B.*, 134 Wn. App. 942, 143 P.3d 846 (2006).

But, as shown in the trial court's quoted finding above, the trial court did not state that D.A. had to complete treatment to meet this statutory requirement. Rather, the trial court relied on evidence of D.A.'s history and pattern of behavior, as well as her active use and lack of communication with the Department and A.A.C. at the time of trial. No evidence presented at trial showed that D.A. was currently in treatment or even seeking treatment. To the contrary, the testimony of Reid and Mishra was that D.A was currently inconsistent in her virtual visits with A.A.C., sporadic in her contact with the Department, and was not in compliance with the court-ordered UA drug testing. Combined with D.A's undisputed pattern of success in inpatient settings followed by relapse after leaving that environment, sufficient evidence shows little likelihood that conditions would be remedied so that A.A.C. could be returned to D.A. in the

near future, especially viewed under the preponderance of the evidence standard of proof.

Affirmed.

_____

WE CONCUR:

_____          _____